**FILED**

U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 0 5 2017

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## EASTERN DIVISION

| | |
|---|---|
| DAVID WATLINGTON, LINDSEY HOLLAWAY, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>CITY OF MCCRORY and PAUL HATCH in his Official Capacity as the Police Chief of McCrory, Arkansas,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. **2:17-cv-2-DPM**

CLASS ACTION

This case assigned to District Judge **Marshall**
and to Magistrate Judge **Kearney**

### CLASS ACTION COMPLAINT

### Introduction

1.      This case is about the City of McCrory banishing some of its poorest residents simply because they are poor.  In September 2016, the McCrory City Council passed a Trailer-Banishment Ordinance forbidding any mobile home worth less than $7,500 to remain within the city limits, levying fines of up to $500 per day.  Plaintiffs David Watlington and Lindsey Hollaway are an engaged couple living in McCrory below the federal poverty line in a trailer worth approximately $1,500.  They cannot afford a more expensive home, and although they would like to begin their married life in McCrory close to family and employment, the McCrory Police Chief has ordered them to leave the county, banishing them because their mobile home is valued at less than $7,500.

2.      The City of McCrory bans trailers and mobile homes within the City unless the resident can establish by a certified appraiser or a bill of sale a value of $7,500 or more.  If Mr.

Watlington and Ms. Hollaway could afford to live in a mobile home valued at $7,500 or more, they would be permitted to remain in McCrory. Because the only criterion preventing Plaintiffs from living in the City of McCrory is the value of their home, McCrory is operating a wealth-based banishment scheme.

3.    Mr. Watlington is currently unemployed. He cannot seek work because the local police records incorrectly show him as having a suspended license. He has been stopped on numerous occasions and has stopped driving because he cannot afford to pay the tickets and resulting court costs. Ms. Hollaway does shift work at the Worldwide Label facility in McCrory. In spite of their poverty, their home meets all reasonable health standards and complies with all other regulations. Plaintiffs have been ordered to leave McCrory *only* because they cannot afford a more expensive home. McCrory's ordinance is, therefore, a wealth-based banishment scheme, imposing a "fate universally decried by civilized people." *Trop v. Dulles*, 356 U.S. 86, 102 (1958). Banishment is a drastic punishment — so much so that the Arkansas State Constitution forbids it at the state level. Art. I, § 21.

4.    Plaintiffs challenge McCrory's Trailer-Banishment Ordinance because it is unconstitutional. Defendants' wealth-based banishment ordinance (1) violates substantive due process by infringing on Plaintiffs' fundamental right not to be forcibly expelled from their place of residence; (2) discriminates on the basis of wealth status without any rational connection to a legitimate government interest in violation of the Equal Protection Clause; (3) criminalizes poverty and thus violates the Constitution's proscription against criminalization of status; (4) imposes excessive fines in violation of the Eighth Amendment for violators of the ordinance whose only offense is being poor; and (5) violates procedural due process by imposing punishment without any process whatsoever.

2

5.      By and through their attorneys, on behalf of themselves and others similarly situated, Plaintiffs seek the vindication of their rights, injunctive relief preventing future enforcement of the Trailer-Banishment Ordinance to allow them quiet enjoyment of their property, and a declaration that the Trailer-Banishment Ordinance is unconstitutional. Defendants cannot banish residents from the City simply because they are poor.

## Nature of the Action

6.      The City of McCrory has enacted an ordinance prohibiting the placement of mobile homes within the City unless the owners show — at their own cost — that the trailers have a value of at least $7,500.  *See* Exhibit 1, Trailer-Banishment Ordinance, Section 2.C.6. Owners can be fined between $50 and $500 per day for violation of the ban, and the Police Chief, Defendant Paul Hatch, has ordered Plaintiffs to leave the City, effectively banishing them from the place they call home.  Plaintiffs seek declaratory and injunctive relief prohibiting Defendants' wealth-based banishment scheme.

## Jurisdiction and Venue

7.      This is a civil rights action arising under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, *et seq.*, the Fourteenth Amendment, and the Eighth Amendment to the United States Constitution.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

8.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## Parties

9.      Plaintiff David Watlington is a 31-year-old resident of McCrory.  He lives with his fiancé, Lindsey Hollaway, in McCrory in a mobile home valued at less than $7,500.  He has been ordered to leave McCrory by the Police Chief because of the value of his home.  *See* Exhibit 2, Watlington Decl.

3

10.     Plaintiff Lindsey Hollaway is a 30-year-old resident of McCrory.  She works 8-to 10-hour shifts at the Worldwide Label facility in McCrory, earning approximately $13,000 per year.  She relies on a 1992 Honda Accord for transportation.  Ms. Hollaway lives with her fiancé, David Watlington, in McCrory in a mobile home valued at less than $7,500.  She has been ordered to leave McCrory by the Police Chief because of the value of her home.  *See* Exhibit 3, Hollaway Decl.

11.     Defendant City of McCrory is a local government entity organized under the laws of the State of Arkansas.

12.     Defendant Paul Hatch, in his official capacity as Police Chief, is an official of Defendant City of McCrory in his role as enforcer of the Trailer-Banishment Ordinance.

13.     Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), Defendant City of McCrory and all City officials are liable for their unconstitutional policies and practices.

14.     Under *Ex Parte Young*, 209 U.S. 123 (1908), the Police Chief in his official capacity can be enjoined from enforcing any unconstitutional local laws.  Any ordinance requiring or permitting wealth-based banishment without due process of law is unconstitutional.

## Factual Allegations

**A.     Defendants Banish from the City Those Who Are Too Poor to Live in Homes Worth $7,500 or More**

15.     On September 12, 2016, the City Council of the City of McCrory passed Ordinance No. 306 (the "Trailer-Banishment Ordinance" or the "Ordinance"), that amended "Ordinance 151A Regulating Trailers, Mobile Homes, Manufactured Housing, Trailer Parks, and Other Purposes."

16.     The Ordinance stipulates, "No trailer shall be put in the City of McCrory unless it has a value established by a certified appraiser or a bill of sale of not less than seven thousand

4

five hundred ($7,500.00).  The owner is responsible for any cost to obtain these documents."

17.    The Ordinance provides that "[a] violation of [the] ordinance shall be punishable by a fine of not less than $50.00 nor more than $500.00 and each day a violation exists shall constitute a separate offense."

18.    The Ordinance contains no defense based on non-willfulness and no *mens rea* or intent requirement, meaning that simply being too poor to afford a more expensive home is sufficient for a violation.

19.    Ms. Hollaway is living with Mr. Watlington at 502 Parker Lane in McCrory in the mobile home valued at less than $7,500.

20.    Mr. Watlington and Ms. Hollaway are an engaged couple.  They have been living together for about two-and-a-half years.

21.    Mr. Watlington bought the used mobile home in McCrory in October of 2015. The previous owner had been living in the mobile home in McCrory.  Mr. Watlington made some improvements to the mobile home and began living in it in November of 2015 in Morton, Arkansas.

22.    On or about September 6, 2016, Mr. Watlington and Ms. Hollaway moved their mobile home to its current lot in McCrory.

23.    Mr. Watlington and Ms. Hollaway's home is worth approximately $1,500.

24.    Due to their limited income, Mr. Watlington and Ms. Hollaway cannot afford a more expensive home.

25.    Mr. Watlington and Ms. Hollaway pay $100 per month to the owner of the land where their mobile home is parked.  They regularly pay their rent on time.  Their landlord has been collecting rent from them for about three months and has no desire to lose them as tenants.

26.     As long as Mr. Watlington and Ms. Hollaway keep paying rent, their landlord will continue to welcome them as tenants.  The landlord has identified no health concerns related to Plaintiffs' tenancy.

27.     At the time when Mr. Watlington and Ms. Hollaway moved into the mobile home in McCrory, there was no ordinance banning trailers valued at less than $7,500.  The McCrory City Council passed and approved the ordinance on September 12, 2016, less than one week after they moved their mobile home into McCrory.

28.     On December 7, 2016, the Police Chief told Mr. Watlington that Plaintiffs had to leave the county "after the holidays" because their home was not compliant with a recently-passed ordinance.

29.     Mr. Watlington is currently unemployed and is not earning any income.

30.     Ms. Halloway earns $255 per week working at Worldwide Label through a staffing agency called Urban Staffing Solutions.

31.     Mr. Watlington and Ms. Holloway have numerous family members who live in the area.  Mr. Watlington's four children (ages 5, 13, and 9-year-old twins) from a previous relationship live in McCrory and he would like to have a relationship with them.   Mr. Watlington's parents, Ms Hollaway's parents, multiple aunts and uncles, and each of their grandparents all live within a short drive from their home.

32.     Because of their financial situation and Mr. Watlington's inability to drive, they rely on family for support.

**B.     Defendants' Wealth-Based Banishment Scheme Violates Substantive Due Process Because It Infringes upon Plaintiffs' Fundamental Right Not to Be Forcibly Expelled from Their Home**

33.     The right not to be expelled from one's home is a fundamental right, connected to

a long line of established fundamental rights, all of which underscore a basic liberty interest in pursuit of living: the right to marriage, the right to procreation, the right to family planning decisions, the right to intimate relations, the right to familial association, the right to educate one's children, and the right not to have one's home taken without just compensation.

34.     After due process of law and lawful conviction for a crime, some cities and counties restrict residents' movement as part of an ensuing pardon, parole, probation, or registration as a sex offender.

35.     The right to remain in one's chosen city of residence loses its fundamental nature *only* in the context of particular criminal convictions.

36.     In McCrory, the Trailer-Banishment Ordinance allows the banishment of individuals whose only "crime" is being too poor to afford a mobile home worth $7,500 or more.

## C.     Defendants' Wealth-Based Banishment Scheme Is Not Rationally Related to Any Legitimate Government Interest

37.     There is no legitimate government interest that is rationally served by the requirement that every mobile home in the City be worth at least $7,500.

38.     The Trailer-Banishment Ordinance lists four justifications for its passage: (1) relief of overcrowding, (2) promotion of orderly growth, (3) health, and (4) notification to builders.

39.     Each of these purported justifications is pretext for animus and banishment based on wealth-status.  The Equal Protection Clause forbids such wealth-based discrimination.  *Berry v. City of Little Rock*, 904 F. Supp. 940, 948 (E.D. Ark. 1995), *aff'd*, 94 F.3d 648 (8th Cir. 1996) ("The states are prohibited by the Equal Protection Clause from discriminating between 'rich' and 'poor' as such in the formation and application of their laws").

40.     The Ordinance says nothing about justifying the minimum required cost of a

trailer home, instead stating that its justifications are based on "a need to regulate the placement of trailers." No justification is given for the wealth-based provision.

   i.    **The $7,500 Value Requirement Bears No Relationship to the Alleged Problem of "Overcrowding"**

   41.    There is no evidence of an existing or anticipated problem of overcrowding in McCrory.

   42.    The 2013 population of McCrory was 1,679 people. The population has decreased since 2010, when it was 1,728. In fact, there has been an overall decline in the population of McCrory at least since 1990, when there were 1,887 residents in the city.

   43.    McCrory is located an hour-and-a-half away from the nearest major airport and is surrounded by other small towns with small populations.

   44.    McCrory is more than an hour-and-a-half from Little Rock, the state's capital.

   45.    Patterson, the town closest to McCrory, has a population of only 437 people.

   46.    McCrory is 2.394 square miles in land area. Its population density is approximately 722 people per square mile. Little Rock, the state's most populous city, has a population density of over 1,700 people per square mile, more than twice that of McCrory.

   47.    Even if overcrowding exists, the $7,500 value requirement does not "prevent crowding" because this goal is already served by the "Space Size" provision regulating trailer parks: "Each trailer shall have a minimum lot size of 1,500 square feet, with a minimum width of 40 feet at the access line. Maximum density — 6 sites/acre of park."

   48.    Any additional overcrowding problems can and should be addressed through zoning measures, not wealth-based banishment.

   ii.    **The $7,500 Value Requirement Does Absolutely Nothing to "Encourage Orderly Growth"**

49.     The phrase "encourage orderly growth" has no discernable meaning within the context of the Ordinance.

50.     It is illogical to claim that a restriction can encourage "growth" of any kind.  If growth is to be encouraged, it must first be allowed.

51.     A wealth-based banishment in particular cannot encourage growth, because it excludes rent-paying residents from living in the City.

52.     Because the size of the city limits is fixed, encouraging growth would increase the population and thus increase the population density.  This purported goal is inconsistent with McCrory's other purported goal of limiting crowding and thus decreasing density.

53.     By forcing poor residents who live in mobile homes out of the city, Defendants are *discouraging* growth.  "Encourage orderly growth" is a euphemism for "get rid of the poor."

**iii.     The $7,500 Value Requirement Does Nothing to Advance Health**

54.     The $7,500 value requirement does not prevent undesirable health conditions, because monetary value simply is not an adequate proxy for health.

55.     Any number of expensive alterations to a mobile home could increase its monetary value without increasing its health rating.

56.     A gold-plated shower would increase the value of a mobile home without making it healthier.

57.     Marble countertops would increase the value of a mobile home without making it healthier.

58.     A surround-sound stereo system would increase the value of a mobile home without making it healthier.

59.     If Defendants had wanted to advance health in mobile homes, they would have

chosen requirements actually related to health, such as prohibiting the build-up of sewage or mandating working smoke detectors.

60.     Requiring that a mobile home be worth at least $7,500 serves no health purpose.

**iv.     The Ordinance Bears No Relation to Notifying Builders**

61.     The Ordinance provides no notification to builders regarding any construction regulations or anything else relevant to their trade.

62.     Builders do not need to be notified that the City's poorest residents are being banished from the City.

63.     No additional building is required by banishing residents like Plaintiffs.

**D.     McCrory's Mobile Home Banishment Ordinance Unconstitutionally Criminalizes a State of Being — The State of Being Poor**

64.     The banishment Ordinance punishes people whose only crime is being too poor to afford a mobile home worth $7,500 or more.

65.     It is unconstitutional to criminalize a status, such as poverty.

66.     Indigent residents like Plaintiffs cannot avoid a violation of the statute.  Through no intent, will, or desire, Plaintiffs only "crime" is living in a home worth less than $7,500.

67.     Plaintiffs are living well below the poverty line.  Their limited income covers basic human needs like food, rent, transportation to work, and other necessities.

68.     Because Plaintiffs cannot afford a more expensive home, they are punished solely for their poverty status.

69.     Defendants may not impose fines or banishment on anyone for the mere status of being poor.

**E.     The Fines for Violating McCrory's Mobile Home Banishment Ordinance Are Excessive**

70.     Defendants' enforcement of the Ordinance through a fine of not less than $50 nor more than $500 each day is an excessive fine for the purported offense of being poor.

71.     Under the fine structure, Plaintiffs could be liable for $7,500 in fines after just 15 days in McCrory.

72.     By stipulating that violations of the Ordinance are "punishable" by fines, the City of McCrory reveals the punitive nature of the Ordinance's enforcement.

73.     The Ordinance sets a huge range of $50 to $500 for the daily fine.  It provides no guidance on how fines in individual cases will be determined within that range.  This leaves violators extremely vulnerable to abuse of discretion by enforcers, who are not accountable to any sort of oversight or appeals process.

74.     The Ordinance does not set a maximum for the total amount in fines that can be imposed upon violators of the Ordinance.  Every day is a separate offense subject to a new fine. The only clear way for Plaintiffs to stop the fines is to leave the city.

75.     Violators face fines of $350 to $3,500 per week if they are unable or unwilling to leave the city.  Even at the minimum daily fine amount of $50, after only five months, the total amount in fines would reach the $7,500 minimum trailer value required by the Ordinance.

76.     The people targeted by this Ordinance, those living in mobile homes worth less than $7,500, are necessarily some of McCrory's poorest residents.  Fining residents for living in homes of insufficient value amounts to an impermissible punishment for being poor.

77.     Poverty is not a crime.  Any fine for the status of being poor is impermissible, thus rendering a fine in any amount disproportionate to the crime under the Eighth Amendment.

78.     The Ordinance's punitive fee structure has a sole purpose: to force poor residents to leave the city.  The mandated excessive fines violate the Eighth Amendment.

11

**F.     Defendants' Wealth-Based Banishment Scheme Violates Procedural Due Process by Providing No Process at All**

     **i.     The Fines and Banishment Threatened by the Ordinance Against Residents Who Do Not Comply with the $7500 Value Requirement Amount to Punishments and Therefore Cannot Be Imposed Without Due Process of Law**

79.     Where a statute employs a sanction as a punishment, it must afford procedural safeguards guaranteed by the Fifth and Sixth Amendments to the Constitution.

80.     The text of the Ordinance makes its punitive intent clear.  It declares violations of its provisions "punishable" by hefty fines.

81.      The Ordinance does not explain who is responsible for enforcing its provisions, such as identifying violations or determining the amount of the mandated fine.

82.     Here, Defendant Hatch, the McCrory Police Chief, has enforced the ordinance against the Plaintiffs, demonstrating the criminal nature of the Ordinance.

83.     Violators of the $7500 value requirement face one of two consequences: They can pay a fine of $50 to $500 for every day that they are in violation, or they can be forced out of the city.  Both of these consequences involve affirmative disability and restraint.

84.     Plaintiffs are restrained from living in the only home they can afford.

85.     Mr. Watlington is being restrained from living in the same city as his four children.  He is being restrained from living in the same county as his parents and other close relatives who can help him with transportation.

86.     Ms. Halloway is being restrained from living in the same city as her current place of employment.

87.     Banishment is a form of punishment so extreme that it has been prohibited by the Arkansas Constitution at the state level.  Banishment as a regulatory measure is inconceivable; it

is punitive by its very nature, and banishment has historically been regarded as punishment.

88.     Fines — especially in the excessive range allowed by the Ordinance — are also historically regarded as punishment.

89.     The fine-based enforcement scheme of the Ordinance is clearly meant to deter because it imposes a new fine for every day of noncompliance.   This makes it virtually impossible for anyone to remain noncompliant for longer than a short period.

90.     The severity of the fines serves both a retributive and deterrent purpose.   The fines are so large that they punish indigent residents for remaining in McCrory and deter future indigent residents from coming.

91.     The Trailer-Banishment Ordinance is enforced broadly against all poor mobile home residents regardless of their financial ability to increase the value of their homes, the hardship they may face in being forced to move, or any other relevant factors.   This blanket, wealth-based application indicates retributive effect.

92.     The sanctions imposed by the Ordinance are not rationally related to any government interests beyond retribution, deterrence, and discrimination.

93.     Banishment is an impermissible, irrational, and excessive measure unrelated to the purported government interests, and the fine scheme is excessive in that it is both unlimited and vulnerable to abuse of discretion.

> **ii.     The Banishment Ordinance Provides No Criminal Process at All**

94.     As a criminal provision that imposes punishment, the Ordinance's lack of any criminal process whatsoever is unconstitutional.

95.     The Ordinance does not require indictment by a grand jury.

96.     The Ordinance does not guarantee a right to counsel for those who face

banishment or fines.

97.     The Ordinance does not require a hearing before banishment or fines are imposed.

98.     The Ordinance does not provide for appeal of an enforcer's decision to banish or fine a resident.

### iii.     Even If the Trailer-Banishment Ordinance's Sanctions Were Civil, It Would Still Lack Sufficient Process to Deprive Violators of a Protected Property Interest

99.     Assessing fines or forcing banishment both implicate "property rights," and therefore due process of law is required before the City can force a citizen to leave because his or her home is of insufficient value.

100.     A leasehold is a property right that would be destroyed if the tenant were forced to leave the city.

101.     The Ordinance makes no provision for due process of law.

102.     The Ordinance has no specified notice requirement.

103.     The Ordinance has no mention of any opportunity to remediate by increasing the value of the mobile home.

104.     The Ordinance has no mention of any right to appeal.

105.     The City of McCrory cannot deny a person's right to choose to live within the city when that person's only offense is being poor.  This amounts to banishment without any safety justification.

### Class Action Allegations

106.     The named Plaintiffs bring this action, on behalf of themselves and all others similarly situated, to assert the claims alleged in this Complaint on a common basis.

107.     A class action is a superior means, and the only practicable means, by which the

named Plaintiffs and unknown Class Members can challenge Defendants' unlawful wealth-based banishment scheme.

108.    This action is brought and may properly be maintained as a Class action pursuant to Rule 23(a)(1)–(4) and Rule 23(b)(2) of the Federal Rules of Civil Procedure.

109.    This action satisfies the numerosity, commonality, typicality, and adequacy requirements of those provisions.

110.    Plaintiffs propose one Class seeking declaratory and injunctive relief.    The Declaratory and Injunctive Class is defined as: all current and future residents of McCrory, Arkansas, who live or will live in mobile homes valued at less than $7,500.

**A.    Numerosity — Fed. R. Civ. P. 23(a)(1)**

111.    The City of McCrory has approximately 1,729 residents.    It is the second-largest city in Woodruff County, where 25.8% of residents are living under the federal poverty level, according to the U.S. Census Bureau.

112.    Using these figures, an estimated 432 residents of McCrory may be living under the federal poverty level.

113.    It is likely that the number of impoverished people who reside or will one day reside in McCrory is high.

114.    The number of current or future residents likely to be impacted by the Trailer-Banishment Ordinance is in the scores, if not hundreds.

**B.    Commonality — Fed. R. Civ. P. 23(a)(2)**

115.    The relief sought is common to all Class Members, and common questions of law and fact exist as to all Class Members.    The named Plaintiffs seek relief concerning whether the Trailer-Banishment Ordinance violates the rights of the Class Members and relief mandating that

Defendants not enforce the Ordinance so that the constitutional rights of the Class Members will be protected in the future.

116.    These common legal and factual questions arise from one law: Defendants' Trailer-Banishment Ordinance. The material requirement of the provision that all mobile homes in McCrory be worth at least $7,500 does not vary from Class Member to Class Member, and the resolution of these legal and factual issues will determine whether all Class Members are entitled to the relief they seek.

117.    Among the most important, but not the only, common questions of fact are:

- Do the City of McCrory and Police Chief Paul Hatch expel residents living in mobile homes worth less than $7,500?
- Do the City of McCrory and Police Chief Paul Hatch impose fines upon residents living in mobile homes worth less than $7,500?
- Do the City of McCrory and Police Chief Paul Hatch inform residents of McCrory who live in mobile homes worth less than $7,500 that they must leave the City?
- Does the Trailer-Banishment Ordinance deter indigent residents from living in McCrory or cause indigent residents to leave McCrory?

118.    Among the most important, but not the only, common questions of law are:

- Does Defendants' Trailer-Banishment Ordinance violate substantive due process by infringing on Plaintiffs' fundamental right not to be forcibly expelled from their place of residence?
- Does Defendants' Trailer-Banishment Ordinance discriminate on the basis of wealth status without any rational connection to a legitimate government interest in violation of the Equal Protection Clause?
- Does Defendants' Trailer-Banishment Ordinance criminalize poverty and thus violate the Constitution's proscription against criminalization of status?
- Does Defendants' Trailer-Banishment Ordinance impose excessive fines in violation of the Eighth Amendment for violators of the Ordinance whose only offense is being poor?
- Does Defendants' Trailer-Banishment Ordinance violate procedural due process by imposing punishment without any process whatsoever?

**C.    Typicality — Fed. R. Civ. P. 23(a)(3)**

119.    The named Plaintiffs' claims are typical of the other Class Members' claims, and

they have the same interests in this case as all other Class Members. Each Class Member is or will be unable to live in McCrory in a mobile home worth less than $7,500. The answer to whether Defendants' wealth-based banishment scheme is unconstitutional will determine the claims of the named Plaintiffs and every other Class Member.

120.    If the named Plaintiffs succeed in the claim that Defendants' policies and practices concerning wealth-based banishment violate their constitutional rights, that ruling will likewise benefit every other Class Member.

**D.    Adequacy — Fed. R. Civ. P. 23(a)(4)**

121.    The named Plaintiffs are adequate representatives of the Class because their interests in the vindication of the legal claims that they raise are entirely aligned with the interests of the other Class Members, who each have the same basic constitutional claims. They are members of the Class, and their interests coincide with, and are not antagonistic to, those of the other Class Members.

122.    There are no known conflicts of interest among Class Members, all of whom have a similar interest in vindicating their constitutional rights in the face of Defendants' wealth-based banishment scheme.

123.    Plaintiffs are represented by attorneys from Equal Justice Under Law, who have experience in litigating complex civil rights matters in federal court and extensive knowledge of both the details of Defendants' scheme and the relevant constitutional and statutory law.

124.    The combined efforts of Class counsel have so far included extensive investigation into Defendants' banishment scheme, including numerous interviews with witnesses, attorneys throughout the region, statewide experts in the functioning of state and local courts, and national experts in constitutional law, law enforcement, judicial procedures, and

criminal law.

125.    Class counsel have a detailed understanding of local law and practices as they relate to federal constitutional requirements.

126.    As a result, counsel have devoted enormous time and resources becoming intimately familiar with Defendants' scheme and with the relevant state and federal laws.  The interests of the Class Members will be fairly and adequately protected by the Plaintiffs and their attorneys.

**E.    Rule 23(b)(2)**

127.    Class action status is appropriate because Defendants have acted or will act in the same unconstitutional manner with respect to all Class Members.  Defendants enforce a wealth-based banishment scheme: wealthy residents of McCrory live undisturbed, while the poorest residents are forced to leave or pay exorbitant fines.

128.    The Class therefore seeks declaratory and injunctive relief to enjoin the City of McCrory and Police Chief Paul Hatch from enforcing the Trailer-Banishment Ordinance. Because the putative Class challenges Defendants' scheme as unconstitutional through declaratory and injunctive relief that would apply the same relief to every Class Member, Rule 23(b)(2) certification is appropriate and necessary.

129.    Injunctive relief compelling Defendants to comply with these constitutional rights will similarly protect each Class Member from being subjected to Defendants' unlawful policies and practices.  A declaration and injunction stating that the City of McCrory and Police Chief Paul Hatch cannot banish or fine residents simply because they live in mobile homes worth less than $7,500 would provide relief to every Class Member.  Therefore, declaratory and injunctive relief with respect to the Class as a whole is appropriate.

### Claims for Relief

**Count One: Defendants Violate Plaintiffs' Substantive Due Process Rights by Banishing Them Because They Live in a Mobile Home Valued at Less than $7,500.**

130.   Plaintiffs incorporate by reference each and all of the previous allegations in this Complaint.

131.   The Fourteenth Amendment's Substantive Due Process Clause prohibits Defendants from banishing Plaintiffs from their home simply because it is worth less than $7,500.   Plaintiffs have a fundamental right to be free from government expulsion absent exceptional circumstances such as conditional parole, pardon, or regulatory sex-offender registration requirements.   Defendants violate this right by enforcing an ordinance against the Plaintiffs that gives them no choice but to leave the City.

**Count Two: Defendants Violate Plaintiffs' Equal Protection Rights by Discriminating on the Basis of Wealth Status Without Any Rational Connection to a Legitimate Government Interest.**

132.   Plaintiffs incorporate by reference each and all of the previous allegations in this Complaint.

133.   The Equal Protection Clause of the Fourteenth Amendment prohibits discrimination that is not rationally related to a legitimate government interest.   There is no legitimate government interest that is rationally served by the requirement that every mobile home in the City be worth at least $7,500.   The Trailer-Banishment Ordinance lists four justifications for its passage: (1) relief of overcrowding, (2) promotion of orderly growth, (3) health, and (4) notification to builders.   Each of these purported justifications is pretext for animus and banishment based on wealth-status.   The Ordinance says nothing about justifying the minimum required cost of a trailer home, instead stating that its justifications are based on "a need to regulate the placement of trailers."   No justification is given for the wealth-based

provision, nor can one reasonably be given.

**Count Three: Defendants Violate the Constitution's Proscription Against Criminalization of Status by Criminalizing Poverty.**

134.    Plaintiffs incorporate by reference each and all of the previous allegations in this Complaint.

135.    The United States Constitution prohibits the criminalization of a status, such as poverty.   The Trailer-Banishment Ordinance unconstitutionally penalizes people simply for being poor.

**Count Four: Defendant City of McCrory's Ordinance Violates the Eighth Amendment's Prohibition Against Excessive Fines on Its Face.**

136.    Plaintiffs incorporate by reference each and all of the previous allegations in this Complaint.

137.    The Eighth Amendment prohibits the City of McCrory from imposing excessive fines on residents that are disproportionate to the alleged misconduct.   McCrory's ordinance provides for fines of up to $500 per day for living in a trailer with an insufficient appraised value, thereby imposing an excessive punishment simply for being poor.

**Count Five: Defendants Violate Plaintiffs' Procedural Due Process Rights Because They Are Attempting to Banish Them from McCrory Without Any Procedural Safeguards at All.**

138.    Plaintiffs incorporate by reference each and all of the previous allegations in this complaint.

139.    The Fourteenth Amendment's procedural due process clause requires that no person be restrained or deprived without proper procedural safeguards, which include in the criminal context the protections of the Fifth, Sixth, and Eighth Amendment of the Bill of Rights. In a civil framework, the government must provide, at a minimum, notice and hearing before

taking adverse action. Defendants are violating Plaintiffs' procedural due process rights because they are forcing them to move from McCrory with no process whatsoever, including lack of formal notice, a hearing, a meaningful opportunity to be heard and present a defense, or appeals process.

### Request for Relief

WHEREFORE, Plaintiffs request that this Court issue the following relief:

a.   A declaratory judgment that the Defendants violate Plaintiffs' constitutional rights by banishing them from the City of McCrory solely because their mobile home is worth less than $7,500.

b.   An order declaring that McCrory's Trailer-Banishment Ordinance is facially unconstitutional because it enacts a wealth-based banishment scheme.

c.   An order and judgment preliminarily and permanently enjoining Defendants from enforcing their unconstitutional wealth-based banishment scheme against Plaintiffs, including all efforts to force Plaintiffs to leave McCrory.

d.   An order and judgment preliminarily and permanently enjoining Defendants from banishing or imposing fines upon any person due to his or her residence in a mobile home valued at less than $7,500.

e.   A judgment compensating Plaintiffs for the damages that they suffered as a result of Defendants' unconstitutional and unlawful conduct.

f.   An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and any other relief this Court deems proper.

Respectfully submitted,

_____

Phil Telfeyan (*Pro Hac Vice* pending)
Catherine Sevcenko (*Pro Hac Vice* pending)
Rebecca Ramaswamy (*Pro Hac Vice* pending)
Attorneys, Equal Justice Under Law
601 Pennsylvania Avenue NW
South Building — Suite 900
Washington, D.C. 20004

(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org
catherine@equaljusticeunderlaw.org
rramaswamy@equaljusticeunderlaw.org

John D. Coulter (AR Bar Number 98148)
McMath Woods P.A.
711 West Third Street
Little Rock, AR 72201
(501) 396-5400
john@mcmathlaw.com

*Attorneys for Plaintiffs David Watlington and
Lindsey Hollaway*

# EXHIBIT 1: McCRORY TRAILER-BANISHMENT ORDINANCE

**ORDINANCE NO. 306: AN ORDINANCE TO AMEND ORDINANCE 151A REGULATING TRAILERS, MOBILE HOMES, MANUFACTURED HOUSING, TRAILER PARKS, AND OTHER PURPOSES. BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF MCCRORY, ARKANSAS ORDINANCE NO. 151A BE ADMENDED TO READ AS FOLLOWS.**

**SECTION 1. DEFINITIONS:** For the purpose of these regulations, the following terms or words are defined as follows.

A.   Mobile Home: A mobile home dwelling with the following characteristics:
   1.   Designed for long-term occupancy containing sleeping accommodations, flush toilet, tub or shower bath, and kitchen facilities with plumbing and electrical connections provided for attachment to outside systems.
   2.   Designed to be transported, after fabrication, on its own wheels, flat bed, other trailers, or detachable wheels.
   3.   Arrives at the site where it is to be occupied as a dwelling unit complete with major appliances.
B.   Mobile Home Parks. A tract of land that is used, designed, maintained, or held out for rent to accommodate one or more mobile homes. Mobile homes located in a mobile home park are used only to provide living and sleeping accommodations; A mobile home park does not include an automobile or mobile home sales lot on which unoccupied mobile homes are parked for inspection or sale. The term "Mobile Home" shall include mobile dwelling.

**Section 2. REGULATIONS:**

A.   Regulation established: From and after the passage of this ordinance trailers, mobile homes and trailer parks shall be regulated and governed by this ordinance.
B.   Trailer -Mobile Home defined: The trailer and mobile home are synonymous. A trailer is a unit designed for use of human habitation moved to its site on wheels. It may or may not be self-propelled. Camping trailers and motor homes are also included.
C.   Placement of Trailers: No trailer shall be parked in the City of MCCRORY unless it meets the following minimum standards:
   1.   Parked in a trailer park.
   2.   Parked on dedicated lot in the City of MCCRORY on which no other dwelling is located and the lot is at least 7,500 square feet and the lot fronts a street.
   3.   A motor home or camping type unit which is parked alongside of a house and no one uses it for habitation while so parked. Exceptions, visitors not to exceed 30 days.
   4.   A trailer within the City of MCCRORY shall be underpinned or skirted within thirty (30) days after being set. Any trailer within the City of MCCRORY prior to the date of this ordinance shall be given sixty (60) days.
   5.   No trailer shall be parked within fifteen (15) feet of property line.
   6.   No trailer shall be put in the City of MCCRORY unless it has a value established by a certified appraiser or a bill of sale of not less than seven thousand five hundred ($7,500.00). The owner is responsible for any cost to obtain these documents.
D.   Trailer Parks: A trailer park will only be permitted in the City of MCCRORY if it has the following minimum standards:

1. Space Size. Each trailer shall have a minimum lot size of 1,500 square feet, with a minimum width of 40 feet at the access line. Maximum density -6 sites/ acre of park.

2. Individual Water and Sewer Connections: Each trailer in a trailer park shall have a separate city water and sewer connection conforming to the requirements of MCCRORY Plumbing Code and Regulations.

3. No trailer park shall be allowed unless a permit has been secured. The permit fee shall be $120.00 per year. The permit will be on a form designed by the City Council and will contain the name, address and agent for service of process (which must be a local person). The fee will prorate if issued during a part of a year.

4. Issuance of Permit: The permit shall be issued by the City Council after a review of the proposed trailer park. The council may refuse to issue a trailer park permit if there is not adequate drainage, access or utility service.

5. Length of Time. That a permit shall be for twelve months commencing January 1 of each year and a new permit must be secured each year.

6. Placement of Trailer. No trailer shall be parked within fifteen (15) feet of property line. No trailer shall be parked closer than twenty (20) feet to any other mobile home or any accessory building or any other building.

7. Custodial Care: The owner of the mobile home park, or a duly authorized attendant or caretaker, shall be in charge at all times to keep the mobile home park, its facilities, grounds, and its equipment in a clean, orderly and sanitary condition. The attendant or caretaker shall be answerable with the owner of such mobile home park for the violation of any provision of this section to which the owner of said development is subject.

8. Parking. Two (2) off street parking spaces per mobile home shall be provided on each mobile home site or within one hundred feet of the individual mobile home site. No off street parking shall be located within any required usable open space.

9. Each mobile home park shall meet such other requirements as the city may require.

10. Plans for a mobile home park, shall be submitted to and approved by the City Council of the City of MCCRORY, Arkansas.

**SECTION 3: ENFORCEMENT:** A violation of this ordinance shall be punishable by a fine of not less than $50.00 nor more than $500.00 and each day a violation exists shall constitute a separate offense.

**SECTION 4. EMERGENCY:** It is determined there exists a need to regulate the placement of trailers in the City of MCCRORY, Arkansas in order to encourage orderly growth and prevent crowding and undesirable health conditions and builders want to know the necessary provision so they can commence construction to relieve the tight housing situation. An emergency is hereby declared to exist and this ordinance will be in full force and effect from and after its passage.

PASSED AND APPROVED WITHIN AND FOR THE CITY OF MCCRORY, ARKANSAS THIS 12th Day of September, 2016.

APPROVED Doyle W. Fowler

ATTEST Karen Harrison

# EXHIBIT 2:
# DAVID WATLINGTON DECLARATION

## DECLARATION OF DAVID WATLINGTON

I, David Watlington, state and declare as follows:

1.      I, David Watlington, am a 31-year-old resident of McCrory, Arkansas.

2.      I am currently unemployed and have no income.

3.      I have had several jobs in the area in the recent past, but I lost them all because McCrory police have repeatedly arrested me on the mistaken belief that I was driving on a suspended license.  Due to this miscommunication I am unable to travel and thus unable to work.

4.      I live with my fiancée, Lindsey Hollaway.  We have been living together for about two-and-a-half years.

5.      Lindsey and I live in a trailer parked on a property at 502 Parker Lane in McCrory, which meets McCrory's requirements for a trailer site.

6.      We pay $100 rent per month for the lot.  We regularly pay our rent on time and have a good relationship with our landlord.  We have been paying rent for about three months.

7.      I bought the trailer in October of 2015 and fixed it up, installing a bathroom and making other repairs.  We started living in it in November of 2015 in Morton, Arkansas.  I estimate that it is worth approximately $1,500.

8.      On or about September 6, 2016, we moved our mobile home to its current lot in McCrory.

9.      My trailer meets all reasonable health standards and complies with all other regulations, except that it is worth less than $7,500.

10.     My four children — ranging in age from five to 13 — live in McCrory.  My aunt and uncle, who raised me, live about 30 minutes away.  My father lives in Morton, and my

grandparents live in Wynne (both of which are near-by towns).

11. I live in McCrory so that I can be near my four children, grandparents, and adoptive parents, and so that I can get to my counseling appointments.

12. Lindsey and I are engaged to be married and wish to begin our married life in McCrory, near our family and friends.

13. Lindsey's paycheck of $255 per week is our only source of income.

14. Because of our limited income, we cannot afford a more expensive home.

15. On December 7, 2016, Police Chief Paul Hatch told David that we would have to move "after the holidays" because our trailer does not comply with a new ordinance.

16. We were not given any written notice to vacate or opportunity to contest or appeal, and we were not given any opportunity to show that our trailer complies with all reasonable health regulations.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 4, 2017.

1-4-17

David Watlington

# EXHIBIT 3:
# LINDSEY HOLLAWAY DECLARATION

## DECLARATION OF LINDSEY HOLLAWAY

I, Lindsey Hollaway, state and declare as follows:

1.    I, Lindsey Hollaway, am a 30-year-old resident of McCrory, Arkansas.

2.    I live with my fiancé, David Watlington. We have been living together for about two-and-a-half years.

3.    David and I live in a trailer parked on a property at 502 Parker Lane in McCrory.

4.    We pay $100 rent per month for the lot. We regularly pay our rent on time and have a good relationship with our landlord. We have been paying rent for about three months.

5.    David and I bought the trailer in October of 2015 and fixed it up, installing a bathroom and making other repairs. We started living in it in November of 2015 in Morton, Arkansas. We estimate that it is worth approximately $1,500.

6.    On or about September 6, 2016, we moved our mobile home to its current lot in McCrory, which meets McCrory's requirements for a trailer site.

7.    Our trailer meets all reasonable health standards and complies with all other regulations except that it is worth less than $7,500.

8.    My parents and sisters live about 30 miles away, and my grandparents live about 50 miles up the road in Barton.

9.    I live in McCrory so that I can be near my family and close to my work place.

10.   David and I are engaged to be married and wish to begin our married life in McCrory, near our family and friends.

11.   I work at Worldwide Label through a staffing company called Urban Staffing Solutions. I make $255 per week. I start my workday as early as 6am and work as many as 10 hours per day.

12.    My paycheck of $255 per week is our only source of income.

13.    Because of our limited income, we cannot afford a more expensive home.

14.    On December 7, 2016, Police Chief Paul Hatch told David and me that we would have to move "after the holidays" because our trailer does not comply with a new ordinance.

15.    We were not given any written notice to vacate or opportunity to contest or appeal, and we were not given any opportunity to show that our trailer complies with all reasonable health regulations.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 4, 2017.

_Lindsey Hollaway_
Lindsey Hollaway